IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RICHARD DWAYNE CADDELL, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-0652 |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Richard Dwayne Caddell, an inmate of the Texas Department of Criminal Justice –
Correctional Institutions Division, proceeding *pro se*, seeks habeas corpus relief under 28
U.S.C. § 2254 challenging his conviction for possession of a controlled substance.
Respondent filed a motion for summary judgment (Docket Entry No. 28), to which petitioner
responded (Docket Entry No. 31).

Based on consideration of the pleadings, the motion and response, the record, and the
applicable law, the Court **GRANTS** summary judgment and **DISMISSES** this case.

## I. PROCEDURAL BACKGROUND

A jury found petitioner guilty of possession of a controlled substance, namely
methamphetamine, under cause number 40,734 in the 23rd District Court of Brazoria
County, Texas.   Finding the five enhancement paragraphs "true," the jury assessed
punishment at seventy years imprisonment. The conviction was affirmed on appeal. *Caddell
v. State*, 123 S.W.3d 722 (Tex. App. – Houston [14th Dist.] 2003, pet. ref'd).  The Texas
Court of Criminal Appeals refused discretionary review, *Caddell v. State*, PDR No. 2129-03,

and denied petitioner's habeas application without a written order on January 18, 2006. *Ex parte Caddell*, No. 13,261-04.

Petitioner raises the following grounds for federal habeas relief, which are grouped and renumbered for clarity and convenience:

(1)     actual innocence and factual insufficiency;

(2)     improper use of enhancement paragraphs:

  (a)     waiver and lack of notice in the indictment;

  (b)     legislative reclassification of prior convictions;

  (c)     lack of proper jury charge and proof;

(3)     incomplete chain of custody:

(4)     lack of *Miranda* warnings;

(5)     perjured testimony;

(6)     grossly disproportionate sentence;

(7)     *Brady* violations;

(8)     ineffective assistance of trial counsel;

(9)     ineffective assistance of appellate counsel; and

(10)    cumulative error.

Petitioner requests an evidentiary hearing.  Respondent argues that an evidentiary hearing is unwarranted, and that petitioner's habeas grounds fail as a matter of law.

## II.  FACTUAL BACKGROUND

The state court of appeals set forth the following statement of facts in its opinion:

> At both a pretrial suppression hearing and at trial, Officer Chad Powers of the Freeport Police Department testified that he observed [petitioner] run a stop sign.  When Powers activated his emergency overhead lights and attempted to make a traffic stop, [petitioner] fled at speeds of up to ninety miles per hour.  After a lengthy chase, [petitioner] drove off the roadway and collided with a tree.  While being booked into the Freeport city jail, two small packets of methamphetamine were discovered on [petitioner's] person.

*Caddell*, 123 S.W.3d at 724.  Petitioner was charged with and found guilty of possession of a controlled substance, namely, the methamphetamine discovered during his jail booking, and sentenced to seventy years incarceration as enhanced by five prior convictions.

## III.  THE APPLICABLE LEGAL STANDARDS

This petition is governed by applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  28 U.S.C. § 2254.  Under the AEDPA, federal relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28 U.S.C. §§ 2254(d)(1), (2).  A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Supreme Court's precedent.  *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

3

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330-31.

## IV.   ACTUAL INNOCENCE AND FACTUAL INSUFFICIENCY

Petitioner claims that the substance in his possession at arrest was powdered antihistamine, not methamphetamine. He asserts actual innocence based on newly-discovered evidence in that "There is now evidence that shows the white powder substance" he was originally charged with possessing "was switched out with a yellowish brown rock like substance" while he was in police custody. (Docket Entry No. 1, p. 7.) He further

4

contends that the "newly-discovered" arresting officer's handwritten police report proves his innocence. These claims were rejected by the state habeas court, which found "no evidence that anyone switched [petitioner's] drugs," and that the allegations of newly-discovered evidence were insufficient to meet state law standards. *Ex parte Caddell*, pp. 186, 359.

Petitioner contends that under *Schlup v. Delo*, 513 U.S. 298 (1995), he is entitled to habeas relief due to newly-discovered evidence of his actual innocence. In order to show actual innocence due to new evidence under *Schlup*, a petitioner must establish it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of evidence that became available only after trial. 513 U.S. at 321. To be credible, an actual innocence claim requires a petitioner to support his allegations of constitutional error with new reliable evidence that was not presented or available at trial. *Id.* at 324; *see also Bosley v. Cain*, 409 F.3d 657, 662 (5th Cir. 2005).

Petitioner asserts that an independent lab report dated February 19, 2002, which identified the "yellowish brown" powder as methamphetamine, was not introduced into evidence at trial and establishes that the substances were switched because no witnesses described the substance as "yellowish brown." Police documents and witnesses at the suppression hearing described the substance as "white and powdery." At trial, however, the State's witnesses described the substance as "white," "yellowish," "a yellow powder," "yellowish-white," "rock-like," and "powdery or granular." S.F. Vol. 6, pp. 28, 129, 135; Vol. 7, p. 5. The primary arresting officer described it as "a small white powder substance

that is – it's rock-like; pieces of it are rocked [sic] together, stuck together." *Id.*, Vol. 6, p. 28. On cross-examination, the officer admitted that he did not report the substance in writing as a yellowish or white rock-like substance. *Id.*, pp. 87-88. On direct examination, the officer testified that the appearance of the substance had changed between the time of arrest and trial, "not only the color, but the grade of the substance, it's kind of broken up a little bit and you can tell there's not that much moisture in it because it is kind of dried out and it's yellower than it was in the past." *Id.*, p. 87. The county lab director chalked the varying color descriptions of the substance up to "semantics." S.F. Vol. 7, pp. 8, 11.

These descriptive variances were brought out on direct and cross-examination, and the jury was aware of the differing descriptions. These variances constitute neither new evidence nor proof of actual innocence. Contrary to petitioner's claims, the independent lab report of February 19, 2002, which identifies the "yellowish brown" powder as methamphetamine, does not establish newly-discovered evidence of actual innocence for purposes of this federal habeas proceeding. The trial court had ordered the pretrial independent analysis, and nothing in the record shows that defense counsel was unaware of the written lab report at time of trial.

Petitioner's challenge to the factual sufficiency of the evidence based on discrepancies in the evidence is not a cognizable ground for federal habeas relief. *See Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). Petitioner's complaints regarding the arresting

officer's handwritten report is interwoven with his *Brady* claim, and is discussed in Section X, *infra*.

The state court's determination rejecting petitioner's claim of actual innocence based on newly-discovered evidence is not in conflict with established federal law and is not objectively unreasonable, and petitioner fails to rebut their presumed factual correctness with clear and convincing evidence.  Respondent is entitled to summary judgment on this claim.

## V.   IMPROPER USE OF ENHANCEMENT PARAGRAPHS

As stated by the state court of appeals in its opinion,

> After hearing the testimony of the witnesses and considering the evidence presented, the jury returned a guilty verdict.  Thereafter, the State's attorney presented to the jury five enhancement paragraphs relating to prior convictions for delivery of a controlled substance, burglary of a motor vehicle, unauthorized use of a vehicle, aggravated assault with a deadly weapon, and unlawful possession of a firearm by a felon.  To these enhancement allegations [petitioner] entered pleas of 'not true,' but after considering the evidence, the jury found the enhancement allegations to be 'true' and assessed [petitioner's] punishment at confinement in the state penitentiary for seventy years.

*Caddell*, 123 S.W.3d at 724.  Petitioner raises the following challenges to the enhancement paragraphs.

A.      <u>Waiver and lack of notice in the indictment</u>

Petitioner complains that the State abandoned the enhancement paragraphs prior to trial, then improperly submitted them the jury without a reindictment.

The record shows that the indictment in petitioner's case included five enhancement paragraphs.  C.R. at 2.  On August 2, 2002, approximately twenty-five days prior to trial, the

State filed a notice abandoning and repleading the enhancement paragraphs to comply with the state habitual enhancement statute. Citing *Brooks v. State*, 957 S.W.2d 30 (Tex. Crim. App. 1997), the State set out the repleaded enhancement paragraphs and served notice on defense counsel. The indictment and the *Brooks* notice identified the same five prior convictions for enhancement purposes. Petitioner did not object to the *Brooks* notice on grounds of surprise or undue prejudice.

In its answer to petitioner's state habeas application, the State alleged that its use of the enhancement paragraphs was proper under *Brooks*. *Ex parte Caddell*, pp. 186-87. In denying habeas relief on this issue, the state court specifically adopted the State's allegations in its answer. *Id.*, p. 359. Accordingly, the state court impliedly, if not expressly, found that the State complied with *Brooks* and that the enhancement paragraphs were properly submitted to the jury during punishment. To the extent petitioner complains that the State failed to comply with *Brooks*, his argument arises under state law and fails to present an issue of federal constitutional dimension. Petitioner cites no applicable federal authority establishing his claim that the State's repleading of the same five enhancement paragraphs violated his constitutional rights.

Petitioner fails to show that the state court's determinations are in conflict with established federal law or are objectively unreasonable, and fails to rebut the presumption of factual correctness with clear and convincing evidence. Respondent is entitled to summary judgment on this claim.

8

B.      Reclassification of prior convictions

Petitioner argues that the trial court violated his right to equal protection by charging the jury with prior convictions that were no longer available for enhancement purposes. Specifically, he contends that as of the date of commission of the instant felony, three of the five prior convictions were unusable as enhancements because the state legislature had reclassified the offenses as state jail felonies or misdemeanors.

In its answer to petitioner's state habeas application, the State alleged that, "Determination of the degree of a felony conviction for enhancement purposes is determined by the penalty at the time of conviction. That the legislature later reduced the penalty is irrelevant. This is not a violation of equal protection." *Ex parte Caddell*, p. 188. In denying habeas relief on this issue, the state court specifically adopted the State's allegations in its answer. *Id.*, p. 359. Thus, the state court impliedly, if not expressly, found that for purposes of enhancement, prior convictions are classified as of the time of their commission, not the time of their use. Accordingly, petitioner's claim for entitlement to post-conviction reclassification status was contrary to state law.

To the extent petitioner complains that the state courts failed to follow state law, his argument fails to present an issue of federal constitutional dimension. In presenting his equal protection claim, petitioner fails to allege or show that he is a member of a suspect class being denied a fundamental right. *See Rublee v. Fleming*, 160 F.3d 213, 217 (5th Cir. 1998). Petitioner cites no applicable federal authority establishing his claim that he is entitled to a

new punishment hearing because of legislative reclassifications of his prior convictions, or that he was denied equal protection.

Petitioner fails to show that the state court's determinations are in conflict with established federal law or are objectively unreasonable, and fails to rebut the presumption of factual correctness with clear and convincing evidence.   Respondent is entitled to summary judgment on this claim.

C.    Lack of proper jury charge and proof

Petitioner complains that the State failed to prove, and the jury was not required to find, the underlying criminal elements of each prior conviction beyond a reasonable doubt. He particularly notes that the State failed to prove his guilt for the four guilty plea convictions.   In short, petitioner asserts that the State had the same burden of proof for the five enhancement convictions as it did for the instant conviction.

This argument was rejected by the state court on collateral review.   In its answer to petitioner's state habeas application, the State argued that, "The prior convictions do not require a jury finding where the defendant plea[d]s guilty.   In addition, the punishment charge in the instant case required the jury to find [the] prior convictions true beyond a reasonable doubt." *Ex parte Caddell*, pp. 192-93.   In denying habeas relief on this issue, the state court specifically adopted the State's allegations in its answer.   *Id.*, p. 359. Accordingly, the state court impliedly, if not expressly, found that petitioner's argument was contrary to the facts and state law.

10

To the extent petitioner complains that the state courts failed to follow state law, his argument fails to present an issue of federal constitutional dimension.  Petitioner cites no applicable federal authority establishing that the jury charge for his enhancement paragraphs violated his federal constitutional rights.  To the contrary, the fact of a prior conviction need not be alleged in an indictment nor proven beyond a reasonable doubt under federal law.  *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (holding that any fact, *other than a prior conviction*, which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt).  *See also United States v. Stapleton*, 440 F.3d 700, 701 n.1 (5th Cir. 2006).  Petitioner's reliance on *Blakely v. Washington*, 542 U.S. 296 (2004), and *U.S. v. Booker*, 543 U.S. 220 (2005), is misplaced.  Even assuming *Blakely* and *Booker* were applicable to state law claims and supported petitioner's argument, they have no retroactive application to cases on collateral review. *See In re Elwood*, 408 F.3d 211 (5th Cir. 2005).

Regardless, a defendant has a due process right to be sentenced as an habitual offender only upon evidence that is sufficient to prove beyond a reasonable doubt the existence of every element required by the enhancement statute. *See, e.g., French v. Estelle*, 692 F.2d 1021, 1024-25 (1982).  The state habeas court found that the jury charge at punishment in petitioner's case required the jury to find the prior convictions "true" under state law beyond a reasonable doubt.  To the extent petitioner challenges the factual

11

sufficiency of the evidence, no cognizable federal habeas claim is raised. To the extent he challenges the legal sufficiency of the evidence to support the jury's findings of "true" to the enhancement paragraphs, his argument is controlled by the standard set out in *Jackson v. Virginia*, 443 U.S. 307, 317-18 (1979). *See French*, 692 F.2d at 1024-25 (applying the *Jackson* standard of review to a federal habeas claim that the State produced no evidence showing the date upon which a second offense occurred for purposes of enhancement). Accordingly, the relevant question in the context of challenging the sufficiency of the evidence with respect to enhancement convictions is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the enhancement statute.

Under Texas law, the penalties for a given offense increase to twenty-five to ninety-nine years imprisonment or life when "the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final." *See* TEX. PENAL CODE § 12.42(d). When prior convictions are collaterally attacked, the judgments reflecting those convictions are presumed to be regular, and the accused bears the burden of defeating that presumption. *Sones v. Hargett*, 61 F.3d 410, 421 n. 19 (5th Cir. 1995). Petitioner did not present any evidence at the punishment hearing contesting the validity or finality of the prior convictions, and he failed to overcome the presumption of regularity that attends final judgments. Therefore, in the instant case, the admitted pen packets provided legally

12

sufficient evidence to support the enhancement of petitioner's sentence under section 12.42(d).

Petitioner fails to show that the state court's determinations are in conflict with established federal law or are objectively unreasonable, and fails to rebut the presumption of factual correctness with clear and convincing evidence.   Respondent is entitled to summary judgment on this claim.

## VI.   INCOMPLETE CHAIN OF CUSTODY

Petitioner asserts that the State failed to present a complete chain of custody for the subject contraband.   The state court of appeals rejected this argument and held as follows:

> [Petitioner] challenges the chain of custody and contends the evidence was not admissible against him.   The record reflects the arresting officer who seized the contraband at issue, placed it in an evidence bag and dropped it in a narcotics lock box.   The evidence bag was later opened by a chemist in the police lab, who ultimately concluded the substance was methamphetamine. Because no one testified that they transferred the evidence bag from the lock box to the lab, and there was some difference of opinion as to whether the contraband was 'off-white' or 'yellow' in color, [petitioner] contends the State failed to show the contraband that was analyzed and introduced in evidence against him was the same substance seized from his person.
>
> Objections regarding theoretical or speculative breaches in the chain, without affirmative evidence of impropriety, go to the weight of the evidence rather than to its admissibility.   Proof of the beginning and the end of the chain will support the admission of evidence.
>
> The testimony presented by the State established, through an explanation of the procedures at the laboratory and markings on the exhibit, that the substance analyzed by the laboratory was the same as seized from [petitioner] and introduced at trial.   Officer Powers testified that after retrieving the evidence from [petitioner] that he marked it, put it in a tamper proof envelope, and placed it in a lock box accessible only by Officer Garcia, the narcotics

> investigator.   An official from the laboratory testified that by using the
> markings on the exhibit, he could discern that the sample came from Officer
> Garcia of the Freeport Police Department and the evidence envelope had not
> been opened.  Having shown no affirmative evidence of tampering, save a
> weak inference related to descriptions of color and texture, [petitioner's
> argument] is overruled.

*Caddell*, 123 S.W.3d at 727-28 (citations omitted).

Against this determination, petitioner presents his conclusory allegations that at some

point powdered antihistamine was switched with methamphetamine.  He again relies on

conflicting testimony regarding the color and texture of the substances found on his person

and produced at trial, as well as the disparate description appearing in the independent

laboratory analysis.  Petitioner fails to rebut the presumed correctness of the state court's

factual findings with clear and convincing evidence.  Moreover, the Fifth Circuit recognizes

that any break in the chain of custody of physical evidence goes to the weight of the

evidence, not its admissibility.  *See, e.g., United States v. Shaw*, 920 F.2d 1225, 1229-30 (5th

Cir. 1991).

The state court's determinations are not in conflict with established federal law and

are not objectively unreasonable, and petitioner fails to rebut the presumption of factual

correctness with clear and convincing evidence.  Respondent is entitled to summary

judgment on this claim.

## VII.   LACK OF *MIRANDA* WARNINGS

Petitioner alleges that he was interrogated twice after his arrest without being given

his constitutional warnings under *Miranda v. Arizona*, 384 U.S. 436 (1966).  The arresting

officers admitted that petitioner provided information in absence of *Miranda* warnings, but testified that in the first instance petitioner spontaneously offered incriminating information without custodial interrogation, and in the second instance answered a non-custodial question.

The two arresting officers testified that after they discovered the baggies on petitioner's person, they discussed between themselves whether the substance was methamphetamine or cocaine. Although no questions were directed to him, petitioner interrupted their conversation and said, "That's speed." S.F. Vol. 6, pp. 32-34. The trial court overruled petitioner's objections to the statement under *Miranda* and allowed it into evidence as a voluntary statement. *Id.*, p. 41. In his response to the instant motion for summary judgment, petitioner argues that he never told the officers it was "speed," and that he was denied his *Miranda* warnings prior to questioning. (Docket Entry No. 31, p. 23.)

In its answer to petitioner's state habeas application, the State alleged that petitioner's statement was not the result of interrogation; that *Miranda* warnings were unnecessary; and that the officers were discussing the identify of the substance and petitioner interrupted them to tell them it was "speed." *Ex parte Caddell*, p. 187. In denying habeas relief on the issue, the state court specifically adopted the State's allegations in its answer. *Id.*, p. 359. Accordingly, the state court impliedly, if not expressly, found that petitioner's statement identifying the substance as "speed" was voluntary and not the product of custodial interrogation, obviating the need for *Miranda* warnings.

15

Petitioner fails to rebut the presumed correctness of the state court's factual findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Miller-El*, 537 U.S. at 330-31. The state court's determination is not contrary to or inconsistent with *Miranda*. *Miranda* does not prohibit the use of voluntary statements that are not the product of custodial interrogation, and provides petitioner no grounds for relief. *See* 384 U.S. at 478.

Petitioner's complaint regarding his second statement is unfounded. The arresting officer testified that, out of curiosity and without providing *Miranda* warnings, he asked petitioner during booking why he ran from the traffic stop. Petitioner told the officer that he ran because he was on parole and did not want to return to prison. S.F. Vol. 6, pp. 35, 37-38. The trial court excluded this testimony, finding that the question was a custodial interrogation without benefit of statutory or constitutional warnings. S.F. Vol. 6, p. 41. Because the trial court sustained petitioner's *Miranda* objection and excluded the statement, no actionable *Miranda* violation is shown.

The state court's determinations are not in conflict with established federal law and are not objectively unreasonable. Petitioner fails to rebut the presumption of factual correctness with clear and convincing evidence. Respondent is entitled to summary judgment on petitioner's *Miranda* claims.

## VIII. PERJURED TESTIMONY

Petitioner claims that the State knowingly used perjured testimony to obtain his conviction. In support, he refers the Court to certain discrepancies within the State's

16

evidence regarding factual matters such as the direction petitioner was traveling when he ran the stop sign, how fast he was speeding when fleeing from the police, how long it took to apprehend him, whether a videotaping machine was working at the jail, whether the arresting officer destroyed his original handwritten report, and the physical description of the seized contraband. *Ex parte Caddell*, pp. 115-120.

In its answer to petitioner's state habeas application, the State argued that the officers testified under oath and petitioner cross-examined them, and that the jury heard the evidence and found the officers credible. *Ex parte Caddell*, p. 187. In denying habeas relief on the issue, the state court specifically adopted the State's allegations in its answer. *Id.*, p. 359. Accordingly, the state court impliedly, if not expressly, found that petitioner's conviction did not result from the knowing use of perjury.

In order to establish a due process violation based on the State's use of false or misleading testimony, a petitioner must show (1) that the witness's testimony was actually false, (2) that the testimony was material, and (3) that the prosecution had knowledge that the witness's testimony was false. *Fuller v. Johnson*, 114 F.3d 491, 496 (5th Cir. 1997); *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990). At most, petitioner here shows that the State's evidence was inconsistent or conflicting at times, but that the jury heard and weighed the evidence. Proof of inconsistent or conflicting testimony does not establish perjury. *Kutzner v. Johnson*, 242 F.3d 605, 609 (5th Cir. 2001); *Koch*, 907 F.2d at 531.

17

The Court has carefully reviewed petitioner's citations to inconsistent and contradictory evidence appearing in the record, and finds nothing to substantiate his conclusory allegations that the State knowingly used perjured testimony at trial. This Court cannot independently evaluate the credibility of trial witnesses or act in the capacity of a fact finder to substitute its judgment for that of the trial court and jury.

Petitioner further claims that the arresting officer perjured himself by testifying that he destroyed his handwritten original report after it was typed and finalized. In support, petitioner refers to a copy of the handwritten report that was faxed to petitioner's parole officer following the arrest. This claim is without merit. That the officer's handwritten report was faxed to petitioner's parole officer two days after the report was written does not prove that the officer perjured himself by testifying that he destroyed the handwritten report after it was typed and finalized. The officer's testimony was imprecise as to the exact date the original may have been destroyed, and the record does not preclude an alternative scenario that the faxed document was a copy of the original made prior to its destruction. Regardless, petitioner fails to establish the materiality of the original handwritten report, as discussed under his *Brady* claim, *infra*.

The state court's determinations are not in conflict with established federal law and are not objectively unreasonable, and petitioner fails to rebut the presumption of factual correctness with clear and convincing evidence. Respondent is entitled to summary judgment on petitioner's claim of perjury.

## IX.  GROSSLY DISPROPORTIONATE SENTENCE

Petitioner contends that his seventy-year sentence is grossly disproportionate to the charged offense and constitutes cruel and unusual punishment in violation of the Eighth Amendment.  The state court of appeals rejected this argument, as follows:

> [Petitioner] contends his sentence of seventy years constitutes cruel and unusual punishment for such a small quantity of contraband.  The Eighth Amendment, which is applicable to the states by virtue of the Fourteenth Amendment, has been recognized as encompassing a narrow proportionality principle.  In other words, punishment that is greatly disproportionate to the offense is prohibited.  Punishment will be grossly disproportionate to a crime only when an objective comparison of the gravity of the offense against the severity of the sentence reveals the sentence to be extreme.  In light of [petitioner's] repeated recidivism, we do not find his sentence to be extreme.

*Caddell*, 123 S.W.3d at 728 (citations omitted).

Punishment assessed within statutory limits generally is not excessive, cruel, or unusual.  Petitioner does not dispute that his punishment was within the state statutory limits. A narrow exception to this rule is recognized where a sentence is "grossly disproportionate" to the offense.  *See Harmelin v. Michigan*, 501 U.S. 957, 1006-07 (1991) (Kennedy, J., concurring); *Solem v. Helm*, 463 U.S. 277, 288 (1983); *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992).

The Supreme Court has shown no hesitation in upholding the constitutionality of lengthy sentences imposed under state recidivist statutes.  In *Rummel v. Estelle*, 445 U.S. 263 (1980), the defendant received a life sentence as a recidivist for obtaining $120.75 by false pretenses.  In rejecting the defendant's Eighth Amendment claim that his life sentence was

grossly disproportionate to his theft of $120.75, the Supreme Court held that "[h]aving twice imprisoned him for felonies, Texas was entitled to place upon Rummel the onus of one who is simply unable to bring his conduct within the social norms prescribed by the criminal law of the State." *Id.* at 284.  The recidivism statute, continued the Court, "is nothing more than a societal decision that when such a person commits yet another felony, he should be subjected to the admittedly serious penalty of incarceration for life, subject only to the State's judgment as to whether to grant him parole." *Id.* at 278.  In *Hutto v. Davis*, 454 U.S. 370 (1982) (per curiam), the defendant was sentenced to two consecutive terms of twenty years in prison for possession with intent to distribute nine ounces of marijuana and distribution of marijuana.  The Supreme Court held that such a sentence was constitutional: "In short, *Rummel* stands for the proposition that federal courts should be reluctant to review legislatively mandated terms of imprisonment, and that successful challenges to the proportionality of particular sentences should be exceedingly rare." *Id.* at 374 (citations and internal quotation marks omitted).

In 2003, the Supreme Court reaffirmed its favorable stance on the constitutionality of lengthy sentences assessed under state recidivist statutes.  In *Ewing v. California*, the Supreme Court observed that,

> Throughout the States, legislatures enacting three strikes laws made a deliberate policy choice that individuals who have repeatedly engaged in serious or violent criminal behavior, and whose conduct has not been deterred by more conventional approaches to punishment, must be isolated from society in order to protect the public safety.  Though three strikes laws may be

relatively new, our tradition of deferring to state legislatures in making and
implementing such important policy decisions is longstanding.

538 U.S. 11, 24 (2003).  Contrary to petitioner's argument in the instant case, the "grossly

disproportionate" sentencing analysis is not limited to the proportionality of the "triggering"

conviction to the resulting sentence.  As the Supreme Court noted in *Ewing*,

> In weighing the gravity of Ewing's offense, we must place on the scales not
> only his current felony, but also his long history of felony recidivism.  Any
> other approach would fail to accord proper deference to the policy judgments
> that find expression in the legislature's choice of sanctions.  In imposing a
> three strikes sentence, the State's interest is not merely punishing the offense
> of conviction, or the 'triggering' offense: '[I]t is in addition the interest . . . in
> dealing in a harsher manner with those who by repeated criminal acts have
> shown that they are simply incapable of conforming to the norms of society
> as established by its criminal law.'  To give full effect to the State's choice of
> this legitimate penological goal, our proportionality review of Ewing's
> sentence must take that goal into account.

*Id.* at 29.

In the instant case, the jury found petitioner guilty of possessing a controlled

substance, and found "true" his five prior convictions.  Under the state statutory scheme for

habitual offenders, petitioner could have been sentenced to life or between twenty-five and

ninety-nine years. *Ex parte Caddell*, pp. 9-10.  The jury assessed punishment at seventy

years.

For purposes of this Court's federal habeas review of the issue, "[T]he only relevant

clearly established law amenable to the 'contrary to' or 'unreasonable application of'

framework is the gross disproportionality principle, the precise contours of which are

21

unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003).

Petitioner fails to show that the state court's rejection of his claim for grossly disproportionate sentencing was contrary to or an unreasonable application of federal constitutional law as clearly established by the Supreme Court, or an unreasonable determination of the facts in the record. Petitioner's case here does not fall within the realm of an exceedingly rare or extreme case, and respondent is entitled to summary judgment on this issue.

## X. *BRADY* VIOLATIONS

Petitioner claims that the State deliberately withheld from disclosure the videotape of his jail booking and the arresting officer's original handwritten police report. The State argues that no videotape was ever found, and that petitioner received a copy of the arresting officer's typed, formalized report transcribed from his original handwritten report. According to petitioner, the errant videotape would show his "total nude body strip search" and custodial interrogations, as well as the color and locations of the substances found on his person. (Docket Entry No. 31, pp. 36-37.) The officer's handwritten report purportedly would show that the officer lied at trial. Petitioner claims that the videotape and handwritten report were in the State's possession, were deliberately withheld, and were material to his defense under *Brady v. Maryland*, 373 U.S. 83, 87 (1963). These arguments were rejected by the state habeas courts. *Ex parte Caddell*, pp. 359, 188-190.

To establish a *Brady* violation, a petitioner must show that (1) the State suppressed evidence; (2) the evidence was favorable to the defense; (3) the evidence was material either to guilt or punishment; and that (4) the evidence was not discoverable by the defendant through due diligence. Evidence is material only if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. *United States v. Bagley*, 473 U.S. 677, 682 (1985). The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of trial, does not establish materiality under this standard. *United States v. Agurs*, 427 U.S. 97, 109-10 (1976). As shown by the following, no *Brady* violation appears in the record.

A.    The handwritten report

The arresting officer testified that after writing out his police report, he gave it to dispatch for typing and finalization. S.F. Vol. 6, p. 77. He believed he shredded the original handwritten report once it had been formalized, and no longer had it in his possession. *Id.*, p. 78. In his state habeas petition, petitioner attached a purported copy of the officer's handwritten report, which showed that it had been faxed to petitioner's parole officer on January 9, 2001, three days after his arrest.[1] *Ex parte Caddell*, p. 33. According to petitioner, this proves that the officer lied about destroying the original, and that the State deliberately withheld the report under *Brady*. This Court is unpersuaded That a copy of the

---

[1]Petitioner states that he obtained this copy through an open records request for his state parole file following his conviction.

23

officer's handwritten report was faxed to petitioner's parole officer on January 9, 2001, two days after it was completed, does not prove that the officer had possession of the document at the time of petitioner's *Brady* motion some seven months later. *See* C.R. at 55.

Regardless, petitioner fails to establish the materiality of the handwritten report. Respondent argues that because both the handwritten report and the typed report are identical, the handwritten copy was not material under *Brady*. Petitioner, on the other hand, claims that, armed with the original report, he would have impeached the officer "tremendously." (Docket Entry No. 31, p. 38.). Petitioner's argument is unsupported. At trial, petitioner cross-examined the officer regarding a discrepancy in the typewritten report as to the direction petitioner was traveling when he ran the stop sign. S.F. Vol. 6, p. 56. The report stated petitioner was traveling westbound, while the officer testified petitioner was traveling eastbound. The officer admitted that his written report had been wrong, as shown by the following:

> DEFENSE COUNSEL:     Now in your report that you prepared, on or about January 7th, 2001, did you not put in there that the vehicle was traveling – traveling westbound?
>
> *        *        *        *
>
> OFFICER:     Right. Now I didn't type this; *I hand-wrote the report and it says the vehicle was traveling west* in the 1000 block of West Broad.
>
> DEFENSE COUNSEL:     And now you're testifying today that the vehicle was traveling eastbound, is that correct?
>
> OFFICER:     Right, *the vehicle was traveling eastbound.*

24

> DEFENSE COUNSEL:   So were you correct when you wrote the report back on January 7th, 2001 or are [you] correct today?
>
> OFFICER:   I'm correct today.
>
> DEFENSE COUNSEL:   So your memory is better today than it was back on January 7th, 2001 concerning [petitioner]?
>
> OFFICER:   No, sir, they're – they're the same.

S.F. Vol. 6, p. 56 (emphasis added).   The officer further admitted that his report was incorrect as to the location of the controlled substance offense:

> DEFENSE COUNSEL:   So – so that's a mistake when it says that the possession occurred at West Road and Velasco?
>
> OFFICER:   Yes, sir.

*Id.*, p. 72.   The officer could not, however, recall whether a third discrepancy – that the offense occurred at 12:09 p.m. rather than 12:09 a.m. –  was due to his own error or a transcribing error by the dispatch typist:

> DEFENSE COUNSEL:   I will ask you to look at this line right here. (Pointing)
>
> OFFICER:   Yeah, that would be 12:00 – that would be 12:09 afternoon.
>
> DEFENSE COUNSEL:   And that's the time that you put in your field incident report that the possession of a controlled  substance took place?
>
> OFFICER:   Well, I didn't type that again, I handwrote it and I can't remember if that's the time that I wrote or whether that's a dispatch error.

*Id.*, p. 84.

In his response to the motion for summary judgment, petitioner argues that the handwritten report was material to his defense because "Had [it] been available [the officer] would not have been let off with claiming dispatcher error because his hand written report was identical to the typed version." (Docket Entry No. 31, p. 36). As shown by the above testimony, the officer never attributed his mistakes to typing error. At most, he testified that he was unable to state whether the "a.m." versus "p.m." discrepancy was his own mistake or a typing error. Petitioner fails to establish that the handwritten report was material to his guilt or punishment, and no *Brady* violation is shown.

For these same reasons, petitioner's claim of actual innocence based on the handwritten report is without merit. Petitioner fails to show that given the officer's original handwritten report, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of all the evidence. No meritorious ground for federal habeas relief is shown.

B.      The videotape

At trial, one of the arresting officers testified to his understanding that the video camera in the jail booking area was not working at the time of petitioner's booking. S.F. Vol. 6, pp. 60-61. However, a second officer testified that to the best of his knowledge, the video camera had been in operation and that he thought there should be a tape of petitioner's booking. S.F. Vol. 7, p. 31. The second officer was unable to locate the videotape. *Id.* The state court denied habeas relief on this ground.

Petitioner's allegation that the State deliberately withheld the videotape from disclosure is conclusory and fails to raise a genuine issue of material fact precluding summary judgment.  The state court's determinations rejecting his *Brady* claim are not in conflict with established federal law and are not objectively unreasonable, and petitioner fails to rebut the presumption of factual correctness with clear and convincing evidence. Respondent is entitled to summary judgment on these claims.

## XI.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI.  A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance and actual prejudice as a result of counsel's deficient performance. *Id.* at 687.  The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688.  In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir.

27

1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

Petitioner alleges the following six instances of ineffective assistance of trial counsel.

A.     Failure to raise a *Batson* objection

Petitioner complains that trial counsel failed to object when the State peremptorily struck the only black venireperson on the panel. (Docket Entry No. 1, p. 12.) He asserts that this violated *Batson v. Kentucky*, 476 U.S. 79, 89 (1986), because "there was no other reason for the State to strike the only black juror from presiding on this trial." (*Id.*)

In denying habeas relief on this issue, the state court relied on and impliedly found credible the affidavit submitted by trial counsel,, and made the following finding of fact:

28

> Trial counsel's decision not to object on *Batson* grounds to Juror #20 was
> based on the State having adequate, nondiscriminatory reasons for striking the
> juror. She believed in rehabilitation rather than punishment as a purpose of
> sentencing. She was a social worker. Trial counsel did not see any racial bias
> or animus by the prosecutor.

*Ex parte Caddell*, pp. 22, 357, Finding of Fact No. 6. The state court concluded that trial

counsel was not ineffective. *Id.*, p. 359. The Texas Court of Appeals relied on the trial

court's findings in denying habeas relief.

The use of peremptory challenges to strike a venireperson based upon race violates

the equal protection component of the Due Process Clause of the Fourteenth Amendment.

*Batson*, 476 U.S. at 89. To prevail here under his claim, petitioner must establish the

existence of a valid *Batson* claim that had counsel raised, would have been granted by the

trial court. To establish a *Batson* claim, petitioner first must establish a *prima facie* case of

discrimination against minority venirepersons. If he does so, the burden shifts to the

prosecution to articulate a race-neutral reason for peremptorily challenging each minority

venireperson. If the prosecution meets this burden, the burden shifts back to petitioner to

establish that the race-neutral reasons were actually a pretext for discrimination. *See*

*Hernandez v. New York*, 500 U.S. 352, 358-59 (1991). This is usually done by showing that

(1) the race-neutral reasons offered by the prosecution were not honest, that is, they were not

supported by the testimony of the venireperson, or (2) that non-minority venirepersons who

gave similar answers were not challenged. *See United States v. Bentley-Smith*, 2 F.3d 1368,

1374-75 (5th Cir. 1993).

Petitioner fails to establish a valid *Batson* claim that trial counsel should have raised. In his response to the pending motion for summary judgment, petitioner conclusorily alleges that the state courts improperly relied on trial counsel's false and perjured affidavit statements. (Docket Entry No. 31, p. 38.) Petitioner further conclusorily asserts that there was no possible reason other than racial discrimination to strike juror number twenty. That the State peremptorily strikes a minority veniremember does not raise a prima facie *Batson* claim. *See, e.g.*, *Soria v. Johnson*, 207 F.3d 232, 239 (5th Cir. 2000) ("[A] defendant must prove discrimination by more than the sole fact that the minority venire-person was struck by peremptory challenge.") Regardless, in its findings the state habeas court established a non-discriminatory reason for the State to peremptorily strike the juror: she was a social worker and believed in rehabilitation rather than punishment as a purpose of sentencing. *Ex parte Caddell*, p. 357. Petitioner does not rebut the presumed correctness of the court's findings with clear and convincing evidence. His conclusory allegations of a valid but omitted *Batson* claim are insufficient to raise a material fact issue precluding summary judgment on his claim for ineffective assistance of counsel.

Petitioner fails to show that the state court's determination was contrary to or involved an unreasonable application of *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment on this issue.

B.    Failure to require proof of the enhancement offenses beyond a reasonable doubt

Petitioner argues that trial counsel was deficient in failing to require the State to prove each underlying element of the prior convictions beyond a reasonable doubt. As previously noted by the Court, the State in its answer to the state habeas application stated that the jury charge in petitioner's case required the jury to find the prior convictions "true" beyond a reasonable doubt. *Ex parte Caddell*, pp. 192-93. In denying habeas relief on the issue, the state court specifically adopted the State's allegations in its answer, and concluded that counsel was not ineffective. *Id.*, p. 359. Accordingly, the state court impliedly, if not expressly, found that petitioner's argument was contrary to the facts and state law. Accordingly, counsel was not deficient for failing to raise a futile or meritless objection. *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).

The Texas Court of Appeals relied on the trial court's findings in denying habeas relief. Petitioner fails to show that the state court's determination was contrary to or involved an unreasonable application of *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

C.    Failure to file a motion to suppress

Petitioner claims that trial counsel was deficient in failing to file a motion to suppress the contraband evidence discovered during his illegal "strip search." (Docket Entry No. 1,

31

p. 13.)  In denying habeas relief on this issue, the state court relied on and impliedly found

credible the affidavit submitted by trial counsel, and made the following finding of fact:

> The defense filed a Motion to Suppress and a First Amended Motion to
> Suppress.  The First Amended Motion to Suppress was heard by [the judge]
> on May 1, 2002.  The issue regarding the strip search was raised during the
> hearing on these motions.

*Ex parte Caddell*, pp. 22-23, 357, Finding of Fact No. 8 (record citation omitted).  The state

court concluded that trial counsel was not ineffective.  *Id.*, p. 359.  The Texas Court of

Appeals relied on the trial court's findings in denying habeas relief.

Petitioner complains that counsel failed to challenge his "strip search" where the

police officers removed all of his clothing and found the drugs on his person.  The record

shows that trial counsel's original and amended motion to suppress do not specifically refer

to an illegal "strip search."  C.R. at 49, 110.  At the suppression hearing, the officers testified

that as part of the normal booking procedures following an arrest, petitioner was requested

to remove his jacket and shirt and surrender all personal property.  The following

suppression hearing excerpts show that the contraband was found on petitioner after he

removed his shirt and while he was wearing his blue jeans:

> FIRST OFFICER:    I had him remove all his personal property, his jacket, his shirt,
> pursuant to Freeport Police Department policy after conducting an arrest so that we
> could inventory his property prior to placing him in a holding cell.

S.F. Vol. 2, pp. 15-16.

> FIRST OFFICER:    I located one clear, plastic Baggie containing a white, powdery
> substance in his waistband – in his stomach area shoved into his waistband; and the
> second fell out of his jeans – leg of his jeans.

*Id.*, p. 17.

> FIRST OFFICER:    After I had him remove his personal property, his shoes, his shirt, and his jacket, he was standing there with his blue jeans on and he had a – what appeared to be a white or – correction – a clear, plastic Baggie containing some type of white, powdery substance.  It was protruding from his waistband area.

*Id.*, p. 42.

> THE STATE:        How did you recover the second [Baggie] ?
>
> FIRST OFFICER:    I believe it fell out of his right pant's leg, blue jean pant's leg, the leg of his jeans.
>
> THE STATE:        Was he still wearing his pants when this happened?
>
> FIRST OFFICER:    Yes, I  believe so.

*Id.*, p. 44.

> SECOND OFFICER:        We asked him to remove all his property, set it on the bench.  He did so.  [The first officer] and I asked him to take off his jacket and his shirt; and when he did, that's when he located a plastic bag handing out of his waistband.

*Id.*, p. 73.

> SECOND OFFICER:        [Petitioner] was asked to remove the property first and then remove his shirt.  That's when [the first officer] noticed the bag then hanging out.  [The first officer] is the one who physically went over and removed it.

*Id.*, p. 76.  Although he testified at the suppression hearing, petitioner himself never stated he underwent a "strip search."  *Id.*, pp. 55-69.  Nothing in the record shows that the contraband was discovered during a "strip search" that left petitioner completely unclothed.

Even assuming such a search were a material issue to the admissibility of the contraband evidence, petitioner's conclusory allegations are unsupported in the record and fail to raise a material fact issue precluding summary judgment.

Petitioner fails to show that had counsel filed a motion to suppress based on a "strip search," the motion would have been granted. Counsel is not ineffective in failing to raise futile or meritless objections. *Koch.*

The state habeas court denied relief on this issue. Petitioner fails to show that the state court's determination was contrary to or involved an unreasonable application of *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

D.    Incorrect punishment advice

According to petitioner, trial counsel advised him that because all but one of his prior state jail convictions could not be used for enhancement purposes, his maximum possible sentence was two to twenty years. (Docket Entry No. 1, p. 13.) Petitioner argues that this was erroneous advice, and that but for trial counsel's incorrect punishment advice, he would have pleaded guilty and accepted the State's offer of twelve years incarceration.

In denying habeas relief on this issue, the state court relied on and impliedly found credible the affidavit submitted by trial counsel and made the following finding of fact:

34

> Trial counsel properly informed [petitioner] about the penalty range. He was fully informed, knowledgeable, and aware that the probable range of punishment would be 25 to 99 years [or] life. He twice rejected a plea offer of twelve (12) years. [Petitioner] thought it was a possible trial advantage if the Jury knew the probable minimum punishment was twenty-five years. He communicated with his attorney that he believed twelve people would find him 'not guilty' based on this fact. The first jury panel was 'busted' and a mistrial was declared primarily because too many jurors would not consider 'life' or ninety-nine years.

*Ex parte Caddell*, pp. 23, 357-58, Finding of Fact No. 9. The state court concluded that trial counsel was not ineffective. *Id.*, p. 359. The Texas Court of Appeals relied on the trial court's findings in denying habeas relief.

By simply disagreeing with the state court's factual findings and restating his own version of counsel's advice, petitioner makes no attempt to rebut the presumed correctness of the state court's findings. *See Summers v. Dretke*, 431 F.3d 861, 871 (5th Cir. 2005). Petitioner fails to overcome the presumed correctness of the state court's findings with clear and convincing evidence. An independent review of the state court record reveals no probative support for plaintiff's conclusory allegations.

Petitioner fails to show that the state court's determination was contrary to or involved an unreasonable application of *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment on this issue.

E.      Failure to object to jury charge

Petitioner was charged with intentionally and knowingly possessing a controlled substance. Petitioner asserts that counsel failed to object to the lack of an "intent" element in the jury charge at the guilt-innocence phase of trial. According to petitioner, the jury was allowed to convict him without finding that he knew the substances in his possession were illegal drugs. Petitioner's argument is incorrect. The record shows that the jury charge defined the terms "possession," "intentionally," and "knowingly" under state law. C.R. at 156-57. The jury charge applied those definitions to the charged offense. *Id.* at 157. In finding that petitioner "intentionally or knowingly possess[ed] a controlled substance," the jury found that he knew that the substances in his possession were controlled substances. Petitioner fails to show that had counsel objected to the jury charge under the grounds raised here, that the objection would have been granted and that there is a reasonable probability that the result of the trial would have been different. Counsel is not ineffective in failing to raise futile or meritless objections. *Koch.*

The state habeas court denied relief on this issue. Petitioner fails to show that the state court's determination was contrary to or involved an unreasonable application of *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

F.    Failure to object to evidence of flight

Petitioner further contends that trial counsel failed to object to evidence that he fled from the police officers when they attempted to stop him. As correctly argued by respondent, flight is admissible as evidence of guilt under state law. *See Bigby v. State*, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994). Petitioner fails to show that had counsel objected to the evidence of flight, the objection would have been granted and that there is a reasonable probability that the result of the trial would have been different. Counsel is not ineffective in failing to raise futile or meritless objections. *Koch.*

The state habeas court denied relief on this issue. Petitioner fails to show that the state court's determination was contrary to or involved an unreasonable application of *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

## XII.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Persons convicted of a crime also are entitled to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387 (1985). This Court reviews counsel's appellate performance under the *Strickland* standards. *See Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1998). Petitioner must allege and present facts that, if proven, would show that his appellate counsel's representation was deficient and that the deficient performance caused him prejudice. *See Strickland*, 466 U.S. at 687-88, 692; *Jones v. Jones*, 163 F.3d 285, 300

(5th Cir. 1998). Effective assistance of appellate counsel does not mean that counsel will raise every available nonfrivolous ground for appeal. *Evitts*, 469 U.S. at 394; *West*, 92 F.3d at 1396. Nor will counsel be deficient for failing to press a frivolous point. *Williamson*, 183 F.3d at 462. Rather, it means, as it does at trial, that counsel performs in a reasonably effective manner. *Evitts*, 469 U.S. at 394. A reasonable attorney has an obligation to research relevant facts and law and make informed decisions as to whether avenues will, or will not, prove fruitful. *Strickland*, 466 U.S. at 690-91.

Petitioner raises the following three instances of ineffective assistance of counsel on appeal.

A.    Failure to raise issues regarding the enhancement paragraphs

In alleging deficient performance by appellate counsel, petitioner reasserts his underlying complaints regarding the enhancement paragraphs: they were waived and improperly used; the enhancement jury charge was improper; and the underlying offenses were reclassified prior to the instant offense. The Court has addressed these and petitioner's related claims and found them without merit. Accordingly, appellate counsel was not deficient in failing to raise meritless arguments on appeal. *Koch*.

B.    Failure to raise issue on denial of lesser included offense charge

Petitioner claims that appellate counsel failed to raise as error the trial court's refusal to charge the jury on the lesser-included offense of possession of less than one gram of methamphetamine. The record shows that petitioner was found in possession of two plastic

baggies of methamphetamine totaling over one gram; possession of a lesser amount is not supported in the record. A defendant is entitled to an instruction on a lesser-included offense under state law if (1) the lesser offense is a lesser-included offense of the charged offense and (2) there is some evidence from which a jury could rationally find that, if the defendant is guilty, he is guilty of only the lesser offense. *Guzman v. State*, 188 S.W.3d 185, 188 (Tex Crim. App. 2006).

In its answer to the state habeas application, the State alleged that there was no evidence from which a jury could have reasonably found petitioner guilty of a lesser included offense. *Ex parte Caddell*, pp. 192-93. In denying habeas relief on the issue, the state court specifically adopted the State's allegations in its answer. *Id.*, p. 359. Accordingly, the state court impliedly, if not expressly, found that petitioner's underlying argument was contrary to the facts and state law. Counsel is not ineffective in failing to raise futile or meritless objections. *Koch*.

Petitioner fails to show that the state court's determination was contrary to or involved an unreasonable application of *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

39

C.    Failure to raise insufficiency of the evidence

Petitioner complains that the evidence was insufficient to show that he knew the substance in the plastic bags was a controlled substance.  He argues that had appellate counsel raised this issue on appeal, the conviction would have been reversed.

In its answer to the state habeas application, the State argued that the requisite knowledge can be proven circumstantially, and that the offense was pleaded and proved properly. *Ex parte Caddell*, p. 192.  In denying habeas relief on the issue, the state court specifically adopted the State's allegations in its answer. *Id.*, p. 359.  Accordingly, the state court impliedly, if not expressly, found that petitioner's underlying complaint was contrary to the facts and state law.  As previously noted, the jury heard evidence that during his arrest proceedings, petitioner told the officers that the substance found on his person was "speed." S.F. Vol. 6, pp. 32-34.  Counsel is not ineffective in failing to raise futile or meritless objections. *Koch.*

Petitioner fails to show that the state court's determination was contrary to or involved an unreasonable application of *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.  No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

### XIII.   CUMULATIVE ERROR

Petitioner's habeas grounds are without merit and no constitutional error is shown. Accordingly, there is no cumulative error, and respondent is entitled to summary judgment on this issue.

### XIV.   REQUEST FOR EVIDENTIARY HEARING

Petitioner requests an evidentiary hearing. (Docket Entry No. 3, p. xii.) As a general rule, unless a habeas petitioner failed to develop the factual basis of his claim in state court, he is entitled to an evidentiary hearing if he alleges facts that, if proved, would entitle him to relief, and the record reveals a genuine factual dispute about the alleged facts. *Theriot v. Whitley*, 18 F.3d 311, 315 (5th Cir. 1994); *see also McDonald v. Johnson*, 139 F.3d 1056, 1059 (5th Cir. 1998). No hearing is required if it would not develop material facts relevant to the constitutionality of the conviction. Where the district court has sufficient facts before it to make an informed decision on the petitioner's claim, the district court does not abuse its discretion in refusing to hold an evidentiary hearing. *McDonald*, 139 F.3d at 1060. Speculation or conclusory allegations do not entitle a petitioner to a hearing. *Id.*; *see also Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989) (no evidentiary hearing required when claims are speculative, the record is complete, or the claims can be resolved without the taking of additional evidence).

This Court is able to resolve the merits of this habeas petition without the necessity of an evidentiary hearing because there is no genuine issue of material fact that is relevant

to petitioner's claims, and the State court records provide the required and adequate factual basis necessary to the resolution of the habeas corpus petition. Petitioner's request for an evidentiary hearing is **DENIED**.

## XV.   CONCLUSION

Respondent's motion for summary judgment (Docket Entry No. 28) is **GRANTED**. The petition for a writ of habeas corpus is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**. A certificate of appealability is **DENIED**. Any and all pending motions are **DENIED** as moot.

The Clerk will provide a copy of this order to the parties.

Signed at Houston, Texas, on this the 27th day of February, 2007.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE